UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re Marvin H. Richer and Gail L. Richer,<br><br>　　　　　　　　　　Debtors. | Bankruptcy No. 10-B-74803<br><br>Adversary No. 11-A-96261 |
| Marvin H. Richer and Gail L. Richer,<br>　　　　　　　　　　Plaintiffs<br>v.<br><br>Patrick Morehead,<br>　　　　　　　　　　Defendant | Chapter 11<br><br>Judge Thomas M. Lynch |

**MEMORANDUM OPINION**

The parties' cross motions for summary judgment on Counts I and II of the Adversary Complaint are before the court. Count I requests a determination of the nature and extent of the claim possessed by the defendant Patrick Morehead pursuant to an agreement, styled "Equity Participation Agreement" (the "Agreement") between Morehead and debtor Marvin Richer, including a determination whether the defendant possesses a security interest in property of the debtors. In Count II, the debtors object to the claim Mr. Morehead filed in the bankruptcy case ("Claim No. 7") based on his putative exercise of a conversion option under the Agreement. In pertinent part, Count II seeks a determination whether defendant Morehead properly exercised his contractual option to convert his equity interest to a demand note for the principal sum of $700,000, plus interest. For the reasons stated herein, the court finds that defendant's Claim No. 7 may be allowed as an unsecured claim, but further finds that such portion of Mr. Morehead's claim that consists of post-petition interest shall be disallowed. Summary judgment accordingly shall be entered in part in favor of defendant and in part in favor of the plaintiffs / debtors.

Page 1 of 12

## PROCEDURAL BACKGROUND

The debtors filed for protection under Chapter 11 of the Bankruptcy Code on September 27, 2010. A trustee has not been appointed. Defendant Morehead timely filed his proof of claim asserting a secured claim of $945,000, including 7% simple interest due as of November 24, 2010, plus "Per Diem interest …to accrue at $134.24657." ("Claim No. 7"). He attached to his claim a copy of the Equity Participation Agreement dated November 25, 2005, together with several documents ancillary to the Agreement. On December 2, 2011, the debtors commenced this adversary proceeding. Their complaint objected in pertinent part to the amount and nature of Claim No. 7, including defendant's assertion that he held a secured claim.[1]

The Chapter 11 plan proposed by the debtors was confirmed on December 28, 2011. The plan provided for prosecution of the debtors' objection to Claim no. 7 and expressly retained jurisdiction over that matter, specifying that to the extent that Claim No. 7 is not disallowed, Mr. Morehead will be paid in full, together with interest, in annual installments.

## FACTUAL BACKGROUND

The following undisputed material facts are found in admissions contained in the pleadings, the parties' Stipulation of Facts (ECF. No. 21), and the uncontroverted supported statements of fact contained in the parties respective submissions filed with these motions. (ECF. Nos. 24 (Ex. 3) and 27) *See* Local Rule 7056-2(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). In addition, the court takes judicial notice of the docket in

---

[1] The debtors' complaint also objects to a separate proof of claim filed by Mr. Morehead for $415,757.61 arising out of a separate investment ("Claim No. 6") (Compl., Counts III, IV). However, the court previously dismissed the counts regarding Claim No. 6 on the debtors' motion. (Order, March 13, 2013, ECF No. 23).

Page **2** of **12**

this case. Fed. R. Evid. 201(c). *See, e.g., In re Highlands of Montour Run*, LLC, 450 B.R. 828, 830 n.2 (Bankr. N.D. Ill. 2011) (citing *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006)).

Marvin Richer owned a 100% beneficial interest and power of direction for the so-called Land Trust No. 5094 (the "Land Trust") through a trust agreement dated January 30, 2003, between Mr. Richer and Home State Bank, N.A. as trustee. The Land Trust owned certain commercial real estate located in Crystal Lake, Illinois (the "Property").

On November 25, 2005 (the "anniversary date"), Mr. Morehead paid Mr. Richer $700,000 pursuant to their Equity Participation Agreement. In return for Morehead's payment, styled in the Agreement as the "equity contribution/investment" of "investment capital for the Owner's use," Mr. Richer agreed to deliver to the trustee of the Land Trust a limited assignment of beneficial interest in favor of Mr. Morehead assigning 8% of the net proceeds from any sale of the Property.

The Agreement did not require Mr. Richer to take any steps to sell the Property, nor did it impose a deadline by when it must be sold. Instead, section 5 of the Agreement, captioned "Option to Convert Participation Interest to Demand Note," provides that Mr. Morehead may convert his equity participation interest into a demand note for $700,000 plus interest at certain times and under certain conditions.

> Beginning the third anniversary date of this Agreement and recurring on each subsequent anniversary date thereafter ... Participant [Mr. Morehead] . . . shall have the sole and exclusive option to convert his Participation Interest to a Demand Note payable within one hundred eighty (180) days of conversion ("Conversion Option"). In the event the Conversion Option is exercised on the third, fourth or fifth anniversary date the principal amount of the Demand Note will be Seven Hundred Thousand and 00/1000 Dollars ($700,000) with simple interest calculated at the rate of Seven Percent (7.00%) from November 25, 2005 up to the date of payment. In the event the Conversion Option is exercised on any anniversary date subsequent to the fifth anniversary date, the principal amount of the Demand Note will be Seven Hundred Thousand and 00/100 Dollars with compound interest calculated at the rate of Eight and One Half Percent (8.5%) from November 25, 2005 up to the date of payment. Participant or his estate will exercise this

option by written notice to Owner, specifying the date of the conversion election (no earlier than the date of the letter), the 180th day for payment, and the interest calculated due upon final payment. Owner shall redeem the Demand Note with interest to the date of payment on or before the on or before the 180th day after notice of conversion.

Equity Participation Agreement § 5.

In Section 9 of the Agreement, entitled "Miscellaneous," a term captioned "Notice" states:

> All notice, requests, demands and other communications hereunder shall be in writing and shall be delivered by hand or mailed by certified mail, return receipt requested, postage prepaid, or by simultaneous fax transmission, as follows.

The "Notice" term includes the addresses for Mr. Richer and his attorney, who is to receive a copy of any notice. Section 9 of the Agreement also contains a paragraph captioned "Prior Agreements" that states: "[t]his Agreement supersedes all prior agreements, oral and written, among the parties hereto with respect to the subject matter hereunder."

There is no dispute that on November 24, 2009, Mr. Morehead signed and mailed notice of his election to convert his equity participation interest to both Mr. Richer and his attorney at the addresses specified by certified mail, return receipt requested. There also is no issue that Mr. Morehead's notice to Mr. Richer, bearing the date of November 24, 2009, states that "[p]ursuant to Paragraph 5 of that certain Equity Participation Agreement dated November 25, 2005 between you and me, I hereby convert my Participation Interest to a Demand Note in the principal amount of $700,000." The notice further requests a "Junior Mortgage pursuant to that agreement." Mr. Morehead's notice expressly specifies November 25, 2009 to be the date of his conversion election, May 24, 2010 to be the 180th day for payment, and $220,500.00 to be the interest calculated as due upon final payment. Mr. Richer received the notice on December 4, 2009. The copy of the notice sent to Mr. Richer's attorney, although addressed to the address listed in the agreement, was returned as "not deliverable" with a return to sender stamp marked "November

28, 2009."

## DISCUSSION

a. Jurisdiction

The debtors' and Mr. Morehead's cross-motions seek summary judgment on Counts I and II of the adversary complaint. In those counts the debtors object to Claim no. 7 filed by Mr. Morehead, pursuant to which he asserts a secured claim of $945,000 secured by real estate under the Equity Participation Agreement. The court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) ("allowance or disallowance of claims against the estate...") and (K) ("determinations of the validity, extent, or priority of liens"). Although the resolution of the debtors' objection to Claim no. 7 in part implicates state law,[2] the matter does not seek any relief beyond disallowing such claim against the estate or property of the estate. This court, therefore, also has constitutional authority to enter final judgments on the matter. *See Stern v. Marshall*, 131 S. Ct. 2594, 2617 (2011) (stating that "he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance" has "no basis ... to insist that the issue be resolved in an Article III court") (citing *Katchen v. Landy*, 382 U.S. 323, 333-34 (1966)). Indeed, the Seventh Circuit recently has held that both *Stern* and the Seventh Circuit's decision, *Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751 (2013), are consistent with the ruling in *Katchen* that bankruptcy courts have authority to adjudicate avoidance actions against creditors who have submitted claims. *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 747 (7th Cir. 2013).

b. Standard for Summary Judgment

---

[2] *See* 11 U.S.C. § 502(b)(1) (court shall allow claims except to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured").

Under Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056), summary judgment is appropriate where the pleadings and admissions on file, together with any supporting affidavits, demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See, e.g., Majors v. General Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013). The task is to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Waukesha Foundry, Inc. v. Industrial Engineering, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. On a motion for summary judgment it is not the court's function to resolve factual disputes or to weigh conflicting evidence. *Waukesha Foundry, Inc.*, 91 F.3d at 1007. Summary judgment is proper when there is only one logical conclusion to be reached by the finder of fact. *Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir. 1996), cert. denied, 520 U.S. 1109 (1997).

The court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors*, 714 F.3d at 533. Summary judgment "is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. (internal quotation marks and citation omitted). "If, after an adequate opportunity for discovery, the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. Apr. 8, 2013) (internal quotation marks and citation omitted). "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find

for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

c. Analysis

Neither party disputes the material facts. Rather, their dispute turns on the meaning of the words used in their Agreement, namely whether the notice of conversion mailed on November 24, 2010 is effective pursuant to the express terms of the Equity Participation Agreement.[3]

The agreement is governed by Illinois law, and under Illinois law the interpretation of a contract is a question of law. *Carr v. Gateway, Inc.*, 944 N.E.2d 327, 330 (Ill. 2011). "The cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language. If the contract language is unambiguous, it should be given its plain and ordinary meaning." *Virginia Sur. Co. Inc. v. Northern Ins. Co. of N.Y.*, 866 N.E.2d 149, 153 (Ill. 2007) (citations omitted). "A contract must be construed as a whole, viewing each provision in light of the other provisions. The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011).

It is only if the contract language is ambiguous that a court should consider extrinsic evidence to determine the parties' intent. *Id.* However, a term is not ambiguous solely because it is not defined in a contract or solely "because the parties can suggest creative possibilities for its

---

[3] The complaint also alleges that Mr. Morehead had failed to properly perfect any lien, security interest or other encumbrance against any property of the estate, and therefore seeks a determination that his claim against the estate is unsecured. (Compl. ¶ 14). Mr. Morehead has conceded on this point. The confirmed plan contains a provision whereby title to the Property and a quit claim deed would be placed into escrow upon confirmation. It provides further that if the Property is not sold by December 28, 2012, the mortgage holder may take the Property free and clear of all liens, encumbrances and interests other than real estate taxes in satisfaction of its debt. Mr. Morehead admits that such date has now passed and the property was not sold, and concedes in his response that there is no longer any collateral that secures the claim. (Def's Resp. to Pl's Mot. for Summ. J., EFC No. 32, 1) ("the claim is admittedly no longer a secured claim in that the collateral was deeded back to the first mortgage holder and no lien in favor of Morehead was recorded").

meaning." *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 846 (Ill. 1995). Instead it is ambiguous "only if it is subject to more than one reasonable interpretation." *Id.*

It is undisputed here that Mr. Morehead sent a written notice to Mr. Richer that specified November 25, 2009 as the date of conversion election, which date was the fourth anniversary of the Equity Participation Agreement. The notice specified the 180th day for payment and the interest calculated due upon final payment. There also is no dispute that this notice was dated November 24, 2009, which was earlier than the specified date of conversion, and was mailed to Mr. Richer, return receipt requested, postage prepaid, on that same date. This is precisely what the express and unambiguous terms of the Agreement require.

Based on language in the Equity Participation Agreement that provides that Mr. Morehead has the "option to convert" his interest "on" the fourth anniversary date and reference to a "Conversion Option" which "is exercised on any anniversary date," the debtors contend that the Agreement requires that Morehead's written notice must be mailed on an anniversary date. Under the debtors' interpretation of the Agreement, a written notice placed in the mail even a day before or a day after an anniversary date is ineffective regardless of the conversion date stated on the written notice. According to the debtors, the provision of the Agreement that requires Mr. Morehead to "exercise this option by written notice" indicates the parties' intention that the delivery of the written notice constitute the exercise of the option. In essence, they contend that it is the act of sending a notice of conversion that is the "exercise" of the conversion option under the terms of the Agreement.

But the express and unambiguous language of the Agreement does not state that the written conversion **notice** must be dated – or sent or received – on an anniversary date.

Page **8** of **12**

Paragraph 5 provides that the participant has the option to **convert his interest** on an anniversary date, and that he "will exercise this option by written notice to Owner, specifying the date of the conversion election (**no earlier than the date of the letter**)." (emphasis added). This language clearly contemplates that the "date of the conversion election" is separate and distinct from the date of the physical notice and can be a different date than the date the notice is prepared or sent. The debtor's proposed interpretation requires the court to ignore the express language in the Agreement describing the notice and the Participant's ability – negotiated for and agreed to by the parties as embodied in the language of the Agreement – to specify a future anniversary date as the date for the conversion of his interest.

The debtors also argue that Morehead was "required to have successfully delivered the written notice of the exercise on the Anniversary Date." (Pl.'s Mem. in Support, ECF No. 26, 10). First, as mentioned above, while the general notice provision does use the term "delivered," nowhere does the Agreement require that the notice of conversion be delivered on or before an anniversary date. Second, while the past-tense verb "delivered" might arguably imply completion of delivery and therefore receipt, the verb "delivered" in that section refers only to the method of hand delivery and not to the alternative method utilizing the postal service, which uses a separate verb, "mailed." It is clear that the provision in the parties' Agreement refers to separate methods for transmitting the written notice with each method separated from the other by the conjunction "or."[4]

Nor is the court persuaded by the debtors invocation of an Illinois decision, *Thakral v. Mattran*, to argue that the Agreement's provision that notice by mail be "by certified mail, return receipt requested" mandates that Mr. Richer *receive* the conversion notice on an anniversary

---

[4] "The use of *or* indicates that the coordinates are to be considered separately." R. Huddleston & G.K. Pullum, THE CAMBRIDGE GRAMMAR OF THE ENGLISH LANGUAGE 508 (2002).

date. 509 N.E.2d 772 (Ill. App. Ct., 2nd Dist. 1987). In contrast to the notice provision in the parties' Agreement here, the *Thakral* decision construed the term "serving written notice," a phrase that does not appear in the Agreement. *Thrakral's* "parenthetical[]" note in *dicta* that "where a return receipt requested is contained **in a statutory notice** provision our supreme court has recognized that notice is not considered complete until received by the addressee," is inapplicable to a non-statutory provision for the "mailing" of notice with return receipt requested that does not select "service" or "serving" as the operative term. *Id.* at 775-76 (emphasis added).

A subsequent Illinois decision is more on point. *Zito v. Guttilla*, 531 N.E.2d 979 (Ill. App. Ct. 1988) construed the meaning of a notice provision that stated: "[a]ll notices herein required shall be in writing and shall be served on the parties at the address following their signatures. The mailing of a notice by registered or certified mail, return receipt requested, shall be sufficient service." *Id.* 531 N.E.2d at 980. The court held that this language only requires that the notice be placed in the mail – not received – by the relevant deadline. *Id.* at 981. In reaching its determination, the court focused on the parties' use of the word "mailing" and the fact that their agreement stated that mailing would be "sufficient service."

As discussed above, the Agreement here, unlike the contracts in *Thakral* and *Zito*, does not refer to "service" of notice or set a deadline for "service."[5] The only time constraint found in the parties' Agreement is that the date of conversion (which had to be on an anniversary date) must be "no earlier than the date of the letter." The fact that the Agreement allowed for written notice by mail so long as by certified mail, "return receipt requested" does not state nor reasonably allow the inference that the notice must be **received** on the designated conversion date.

---

[5] Cf. Thakral, 509 N.E.2d at 854 ("[i]n legal contemplation of the term, a statement that defendant was 'served' with notice means that he 'received' it.").

The debtors' attempt to buttress their argument with allegations about the parties' negotiations and prior drafts of the Agreement is of no avail. Section 9 of their Agreement contains an express "integration clause" that explicitly states that the signed Agreement "supersedes all prior agreements, oral and written." Illinois law recognizes that this provision establishes the parties' intent that their negotiations are not a part of the agreement and precludes consideration of that extrinsic evidence. By including this term in their contract the parties "explicitly manifest[] their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 786 N.E.2d 882, 885 (Ill. 1999).

Although extrinsic facts only become relevant to interpretation of an agreement if the Agreement is ambiguous, the debtors argue that the fact that Mr. Morehead did not request or receive a separate physical demand note after sending the notice of conversion demonstrates that he knew his interpretation of the contract was incorrect. However, the Agreement does not require delivery of a separate document entitled "Demand Note." The term "Demand Note" is not defined in the Agreement as a separate document and is merely used in the Agreement to describe Mr. Morehead's rights under the November 2005 Agreement after conversion.

Based on the undisputed facts, there is no genuine issue that Mr. Morehead properly exercised his option to convert his equity participation interest into a demand note pursuant to the terms of the Agreement and is, therefore, entitled to an unsecured claim for a return of his $700,000 in principal plus interest.[6] The debtors did not generally dispute Mr. Morehead's calculation of interest, focusing instead on the issue of whether the interest had been converted. But, it is clear that the amount of interest claimed by Mr. Morehead includes interest accrued

---

[6] It is therefore not necessary for the court to decide the nature of any rights or claim, if any, that Mr. Morehead would have against the Property or the estate had his interest remained that of an equity participant.

after the petition date. Under Section 502(b)(2), the court shall determine the amount of a claim "as of the date of the filing of the petition" and shall disallow a claim to the extent that "such claim is for unmatured interest." 11 U.S.C. §502(b)(2). Therefore, that portion of defendant Morehead's claim constituting post-petition interest shall be disallowed.[7]

## CONCLUSION

Mr. Morehead's secured claim for $945,000 shall only be allowed as an unsecured claim and shall further be disallowed in an amount equal to the portion included in his calculation in his proof of claim in respect of post-petition interest accrued between September 27, 2010 and November 24, 2010. Therefore, summary judgment shall be entered in part in favor of Defendant, and shall be entered in part in favor of the Plaintiffs in accordance with this ruling. The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052.

A separate order will be entered consistent with this Memorandum Opinion.

DATE: January 9, 2014

ENTER: _____

Thomas M. Lynch
United States Bankruptcy Judge

---

[7] Section 506(b) gives certain secured creditors the right to post-petition interest in certain circumstances out of the proceeds of collateral where the claim is over secured, but generally unsecured creditors do not have a right to a claim for post-petition interest against the estate. The confirmed plan, by its terms, will presumably provide for accrual of interest on Mr. Morehead's allowed claim commencing from the effective date of the plan, but the allowed claim itself shall not contain any post-petition interest.